**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| PHILIP MARK WALKER,<br><br>               Petitioner/Plaintiff,<br><br>     v.<br><br>USA SWIMMING, INC., a foreign<br>corporation,<br><br>               Respondent/Defendant. | Case No. 3:16-CV-0825<br>Hon. Terrence G. Berg |

**OPINION AND ORDER DENYING AMENDED PETITION
TO VACATE ARBITRATION AWARD AND DISMISSING
COMPLAINT FOR DAMAGES (Dkt. 14)**

### I.    Introduction

Petitioner Philip Mark Walker ("Petitioner" or "Walker") is a former swim coach with Respondent, USA Swimming, Inc. ("USA Swimming"). Walker was permanently suspended from membership in USA Swimming after it conducted an investigation of allegations that Walker sexually abused two minor-aged swimmers between 1986 and 1991. Having exhausted USA Swimming's internal disciplinary process, Walker commenced an arbitration proceeding—conducted by the American Arbitration Association ("AAA")—which affirmed Walker's lifetime suspension. Walker now challenges the disciplinary proceedings and the arbitration award, alleging the proceedings were infected with rules violations, and asks

the Court to vacate the award and reinstate Petitioner's membership with USA Swimming.

USA Swimming previously moved to dismiss Walker's complaint for lack of subject matter jurisdiction pursuant to 12(b)(1) of the Federal Rules of Civil Procedure. Dkt. 35. Walker responded that the Court had subject matter jurisdiction through diversity jurisdiction and separately through federal question jurisdiction pursuant to the Federal Arbitration Act and the Sports Act. *Id* at 42-43. The Court found that Walker failed to meet the amount in controversy requirement for diversity jurisdiction. Dkt. 55, Pg. ID 4877-78. Regarding subject matter jurisdiction under the FAA, the Court explained that it "does not create any independent federal-question jurisdiction," Dkt. 55, Pg. ID 4879 (internal citations omitted), and that Mr. Walker needed "an independent basis for federal question jurisdiction." *Id*.

As to potential federal question jurisdiction under the Sports Act, the Court also found that it does not create a private right of action. Dkt. 55, Pg. ID 4879 (citing 36 U.S.C.A § 220505(b)(9)). But the Court noted that "at least one small exception . . . has been recognized: 'ensuring that the organization follows its rules in determining eligibility.'" Dkt. 55, Pg. ID 4880 (citing *Slaney v. The Int'l Amateur Athletic Fed'n*, 224 F.3d 580, 595 (7th Cir. 2001)). Accordingly, the Court found federal question jurisdiction on the "discrete

issue of whether USA Swimming and the arbitrator properly implemented USA Swimming's own rules and regulations in imposing the lifetime ban upon Walker[.]" Dkt. 55, Pg. ID 4881. Thus, Walker has an independent basis for federal jurisdiction in this Court for the Court to address his claims brought under the Federal Arbitration Act.

USA Swimming opposes the petition to vacate the arbitration award. The Court heard oral argument on the matter on November 28, 2017.

For the reasons outlined below, Petitioner's Amended Petition and Complaint to Vacate Arbitration Award is **DENIED** and the Complaint for Damages, Dkt. 14, is **DISMISSED**.

## II. Background

The Ted Stevens Olympic and Amateur Sports Act ("Sports Act") created the United States Olympic Committee ("USOC"), which is tasked with regulating amateur athletics and amateur sports organizations in the United States. For each Olympic sport, the Sports Act allows the USOC to recognize one national governing body ("NGB"). 36 U.S.C. § 220521(a). The USOC has recognized Respondent, USA Swimming, as the NGB for the sport of swimming in the United States. Dkt. 14, Pg. ID 42; Dkt. 61, Pg. ID 4920. Accordingly, as the NGB for swimming, USA Swimming establishes

eligibility requirements for participation in amateur and Olympic swimming throughout the United States. 36 U.S.C. § 220523(a).

The National Board of Review ("NBR") is the internal judicial forum for USA Swimming; it is composed of volunteer members. Dkt 61, Pg. ID 4920 (internal citations omitted). When a complaint is brought against a USA Swimming coach, the NBR issues a notification of hearing and then conducts a hearing on the allegations. *Id.* At the hearing, both sides present evidence and testimony in order for the panel to determine whether a violation occurred. *Id.* The NBR then issues a written decision of its finding. USA Swimming's Rules provide for an appeal of NBR decisions to a panel of USA Swimming's Board of Directors and, thereafter, to an arbitrator with the AAA. *Id.*

## A.   USA Swimming's Investigation Relating to Walker

At the time of his suspension, Petitioner Philip Mark Walker had been a coach for USA Swimming for over 30 years. Dkt. 60, Pg. IDs 4894-95. Walker is also the former coach of Excel Aquatics ("XCEL"), a USA Swimming team with over 500 registered members as of January 2014. Dkt. 60, Pg. ID 4896.

On September 23, 2013, a former XCEL athlete ("Victim A") reported to USA Swimming that Walker sexually abused him from 1988 to 1991 while Walker was his swim coach. Dkt. 51-1, Pg. ID 4263. Victim A described a pattern of behavior in which Walker

would massage Victim A and then proceed to engage in the alleged sexual abuse, which occurred during the time Victim A was 12 to 15 years old. Dkt. 61, Pg. ID 4921. On October 11, 2013, USA Swimming informed Walker that he was the subject of a complaint alleging a Code of Conduct Violation. *See* Dkt. 60, Pg. ID 4896.

USA Swimming initiated an investigation into Victim A's allegations, at which time a second individual, Victim B, independently alleged that Walker abused him while his swim coach at XCEL. *Id.* (citing Dkt. 51-1, Pg. ID 4263). Victim B stated that Walker would begin by massaging him, which would sometimes lead to the same act of abuse described by Victim A. Victim B described sexual abuse that occurred during the time he was 13 to 15 years old. *Id.*

Based on its investigation, including interviews of Victim A and Victim B, USA Swimming filed a petition against Walker with the NBR on January 16, 2014. Dkt 51, Pg. ID 4263-64. The Petition alleged violations of Article 401.1 of USA Swimming's 1986-1991 Rulebooks and Article 304.4.8(A) and 304.3.19 of USA Swimming's 2014 Code of Conduct. *Id.*

## B.    Walker's First National Board of Review Hearing

The first NBR hearing was held in May 2014. *See, e.g.,* Dkt. 41-1, Pg. ID 2692. Victim B testified that Walker inappropriately touched him between 1986 and 1988 while Victim B was 13 to 15

years old. Dkt. 41-1, Pg. ID 2699. According to Victim B, these incidents occurred at Victim B's home, Walker's home, and in hotel rooms at swim meets. *Id* at 2699-70. Victim B testified that he reported the abuse to his wife in 2010, and in 2013 he reported the abuse to the Tennessee Department of Children's Services. Dkt. 61, Pg. ID 4922 (citing Dkt. 41-1, Pg. IDs 2710-11).

Victim A also testified at the hearing. Dkt. 41-1, Pg. IDs 2714-2729. Victim A stated that from 1988 to 1999, when he was 12 to 15 years old, Walker would perform rubdowns on him that would lead to sexual acts. Dkt. 61, Pg. IDs 4922-23 (internal citations omitted).

During the initial NBR hearing, Petitioner's counsel cross-examined each of USA Swimming's witnesses, presented his own direct testimony, and introduced numerous exhibits. *See, e.g.,* Dkt. 41-1, Pg. IDs 2721, 2731, 2735. Walker also submitted written evidence, including his own 23-page narrative statement and affidavits from eight additional witnesses. Dkt. 41-2, Pg. IDs 2753-2801.

On May 19, 2014 the NBR Panel issued its decision. Dkt. 51-2, Pg. IDs 4444-58. The NBR Panel unanimously found that Walker had violated USA Swimming's Rules and Regulations and its Code of Conduct. *Id.* As a result, the NBR permanently suspended Walker from membership in USA Swimming. *Id.*

### C.  Walker's Appeal to the Board of Directors, Supplemental NBR Hearing, and Subsequent Appeal

As allowed by USA Swimming's Rules and Regulations, Walker appealed the NBR's decision to USA Swimming's Board of Directors. Dkt. 51-2, Pg. ID 4444-58. On appeal, Walker argued that he had not received sufficient time to present his defense to the NBR Panel. Finding for Walker on this issue, the Board of Directors remanded the matter to the NBR with the recommendation that each side be allowed an additional sixty minutes. *Id.* at 4464, 4519-21.

The NBR Panel conducted a supplemental hearing in accordance with the Board of Directors' order. Walker presented additional direct testimony and called his former wife as an additional witness. *See* Dkt. 46-1, 3307-11. Having received Walker's additional evidence, the NBR Panel again concluded he had violated USA Swimming's Rules and Regulations and banned him from membership in USA Swimming. Dkt. 51-2, Pg. IDs 4543-50. Walker appealed the NBR's second decision to USA Swimming's Board of Directors. Dkt. 51-4, Pg. IDs 4627-32. The parties submitted written briefs and counsel for both parties presented oral argument. Dkt. 61, Pg. ID 4924. The Board of Directors affirmed the NBR decision and ordered that Walker be permanently suspended. Dkt. 51-4, Pg. ID 4742-44.

### D. Proceedings before the American Arbitration Association

The Sports Act requires that USA Swimming "agree to submit to binding arbitration in any controversy involving . . . the opportunity of any [coach] to participate in amateur athletic competition, upon demand of the [USOC] or any aggrieved [coach], conducted in accordance with the Commercial Rules of the American Arbitration Association." 36 U.S.C.A. § 220522(a)(4)(B). Walker filed a demand for arbitration with the AAA, pursuant to this section, after the Board of Directors affirmed the NBR's permanent suspension of Walker. Dkt. 47-1, Pg. IDs 3544-60, 3642-47.

Walker alleged that USA Swimming had violated its own constitution and bylaws and that the NBR and Board of Directors' proceedings lacked fundamental fairness. *See, e.g.,* Dkt. 47-1, Pg. ID 3642-47. Walker requested a temporary injunction on the publication of his name on the USA Swimming's "banned" list, dismissal of USA Swimming's lifetime ban, and/or a de novo hearing on the disciplinary issue. *See id; see also id.* at 3674-86.

The AAA appointed retired judge Connie L. Peterson to arbitrate the matter. Dkt. 61, Pg. ID 4925. The first issue briefed by the parties and addressed by the arbitrator related to the appropriate standard of review to be applied by the arbitrator. Walker argued

that the arbitrator should apply a *de novo* standard of review, giving no deference to the findings by the NBR and Board of Directors and including "a review of the facts and consideration of additional testimony presented at a 'full evidentiary hearing' before the Arbitrator." Dkt. 47-3, Pg. ID 3899. Walker cited one arbitration decision in support of his position. *See* Dkt. 47-1, Pg. ID 3678, Dkt. 47-3, Pg. ID 3898-99.

USA Swimming, on the other hand, relied on a line of judicial and arbitral authority relating to the review of disciplinary decisions by private associations holding that the arbitrator should review the entire record from the NBR and Board of Directors' disciplinary proceedings to determine whether the proceedings lacked fundamental fairness, were arbitrary or capricious or motivated by prejudice, bias or bad faith. Dkt. 47-2, Pg. IDs 3700-04; Dkt. 47-3, Pg. IDs 3902-05. Accordingly, USA Swimming argued that

During oral argument, both counsel acknowledged that the arbitrator had the right to decide what standard of review to apply to Walker's arbitration proceeding. Counsel for Walker conceded that no governing law, rule, or regulation required the arbitrator to apply a *de novo* standard of review or hold a *de novo* hearing during the arbitration process, and that it was proper for the arbitrator to exercise discretion to determine what standard of review to apply to Walker's claims in arbitration.

In exercising her discretion, the arbitrator determined that the appropriate standard of review was whether "the [NBR] acted in any arbitrary or capricious manner without minimum due process," and that this could be determined "by reviewing the evidence and arguments considered by the [NBR] and its procedures." Dkt. 51-5, Pg. ID 4779. Accordingly, the arbitrator reviewed the records from the NBR and Board of Directors' proceedings, additional briefs submitted by the parties, held oral arguments, and made the following specific factual findings:

1. Walker had received the specific charges made against him and received a copy of documentary evidence from USA Swimming.

2. Walker had submitted his own documentary evidence, cross-examined witnesses, including his accusers, presented testimony on his own behalf, presented witness testimony in person and by written statements and presented arguments to the NBR and Board of Directors.

3. USA Swimming complied with the requirements outlined in USOC's "Due Process Checklist."

4. The NBR considered testimony favorable to Walker but found his accusers more credible.

5. With respect to Walker's argument that USA Swimming engaged in "trial by ambush" when it called an expert witness without adequate notice, the arbitrator found this argument lacked merit because the NBR has expressly rejected the testimony of the witness in question.

6. No evidence in the record supported Walker's allegation that Victims A and B lied for financial gain.

*See* Dkt. 49-2, Pg. IDs 4242-44. The arbitrator issued her final arbitration award on February 1, 2016. Dkt. 49-2, Pg. ID 4239-44. The arbitrator concluded that Walker "failed to meet his burden of proof by a preponderance of the evidence that the disciplinary proceedings lacked fundamental fairness, the decision was arbitrary or capricious and the NBR and Board of Directors were motivated by prejudice, bias or bad faith." Dkt. 49-2, Pg. ID 4244. In sum, the arbitrator rejected each of Walker's claims. *Id.*

## E. Walker's Federal Court Action Requesting Vacatur of the AAA Award

Walker subsequently filed an Amended Petition and Complaint to Vacate Arbitration Award and Complaint for Damages ("Amended Petition") with this Court. Dkt. 14. Walker claims that USA Swimming and the arbitrator failed to follow USA Swimming's own rules and regulations throughout the disciplinary process and in instituting his lifetime ban. *See generally,* Dkt. 14. Specifically, Walker alleges that USA Swimming violated its internal rules and procedures in the following ways:

a. The hearings in this case were conducted by phone, despite Petitioner's request that the hearings be held in person.

b. The hearings were not conducted by a disinterested and impartial body of fact finders.

c. He was denied the right to call witnesses at the hearings.

d.   He was denied the right to confront and cross examine certain adverse witnesses, whose "testimony" instead was admitted in the form of memoranda by a USA Swimming "investigator" summarizing her interviews or declaration.

e.   The NBR applied a "preponderance of the evidence standard" when it could, and should have, applied a higher burden of proof in light of the allegations that were the subject of the complaint, and in light of the consequences to Petitioner of an adverse finding and publication on USA Swimming's so-called "banned list."

f.   The NBR failed to provide a written decision that included specific findings and "reasons therefore" based solely on the evidence in the record.

g.   The NBR arbitrarily applied severely limited time restrictions to the presentation of testimony, including direct and cross examination of witnesses, without consultation or any consideration of an amount of time that would reasonably allow Petitioner to defend him against the complaint.

*See* Dkt. 14, Pg. IDs 45-46.

Walker also alleges that that USA Swimming wrongly denied him certain procedural rights and fairness:

a.   He was denied the right to propound discovery to USA Swimming.

b.   USA Swimming was not obligated to provide him with any information in its possession, whether though discovery or otherwise.

c.   USA Swimming was not obligated to provide information concerning any of its witnesses in advance of the hearing, other than the names of the individuals it intended to call.

    d.    USA Swimming violated its own Rules and Regulations and the sequestration order by the NBR Chair, and provided Petitioner's pretrial exhibits and narrative statements to USA Swimming's witnesses in advance of trial, and in doing so irreparably tainted the fairness of the hearings.

*See id.* at 46-47.

Walker alleges that "the Arbitrator wrongly refused to hear evidence pertinent and material to the controversy, and she wrongly refused to grant a *de novo* hearing, which was Walker's right to receive. The arbitrator did not allow any testimony from witnesses who possessed critically important eyewitness testimony during the times in question." *Id.* at 47.

Walker's complaint seeks vacatur of the arbitration award, an order directing USA Swimming to remove Walker's name from its "banned list," dismissal of the disciplinary action and expulsion against Walker, and damages. Dkt. 14, Pg. ID 48. In the alternative, Walker requests that this matter be remanded to the AAA with an order requiring the appointment of a new arbitrator, and for *de novo* hearing. *Id.* at 49.

The Court will now turn to address Walker's motion to vacate the arbitration award.

## III. Standard of Review

Section 10(a) of the FAA sets forth the grounds upon which an arbitral award may be vacated. It states:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) where the award was procured by corruption, fraud or undue means;

(2) where there was evident partiality or corruption in the arbitrators, of either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Furthermore, a court may modify or correct an arbitration award under the following three circumstances:

(a) Where there was evident material miscalculation of figures or an evident material mistake in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy

9 U.S.C. § 11. In interpreting these statutory provisions, the Sixth Circuit has stated:

A federal court may set aside an arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, only when certain statutory or judicially created grounds are presented. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 420.... [A]bsent circumstances indicating that the arbitration process was tainted by the statutory grounds of fraud, corruption, or arbitrator misconduct, a federal court may also vacate arbitration awards made "in manifest disregard of the law." *Id.* at 421 (internal citations omitted). The manifest disregard of the law standard is very narrow. "A mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established legal precedent." *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 70 F.3d at 421 (citation omitted). An arbitrator acts in manifest disregard of the law only if the applicable legal principle is clear and well-settled and the arbitrator refuses to follow that legal principle. *Id.* When the arbitrator does not explain his resolution of certain questions of law, as in this case, the award must be confirmed if the court can find any line of argument that is legally plausible and supports the award. *Id.*

*Golden Brands, LLC v. Castle Cheese, Inc.,* 110 Fed. Appx. 666, 668 (6th Cir. 2004). The Sixth Circuit has also provided that "It is well established that courts should play only a limited role in reviewing the decisions of arbitrators." *Shelby County Health Care Corp v. A.F.S.C.M.E., Local 1733,* 967 F.2d 1091, 1094 (6th Cir. 1992). With the aforementioned guiding principles of law in mind, the Court turns to Walker's claims.

## IV.  Analysis

Walker's Amended Complaint seeks an order vacating or reversing the award issued by the arbitrator in this matter. Dkt. 14,

Pg. IDs 48-49. Federal courts have consistently affirmed the principle that "[r]eview of an arbitrator's award is governed by one of the narrowest standards of judicial review in all of American jurisprudence." *See, e.g., Uhl v. Komatsu Forklift Co., Ltd.*, 466 F.Supp.2d 899 (E.D. Mich. 2006) (quoting *Lattimer-Stevens Co. v. United Steelworkers of Am.*, 913 F.2d 1166, 1169 (6th Cir. 1990). Thus, Walker must establish one or more valid grounds for vacating the award under the standards set out in the FAA. *See Uhl*, 466 F.Supp.2d at 905 (citing 9 U.S.C. §§ 10(a), 11).

Rather than highlighting alleged errors committed by the arbitrator, Walker's brief focuses primarily on the internal disciplinary proceedings that led to his ban—alleged errors and issues that occurred *before* he commenced arbitration. *See, e.g.,* Dkt 60. Walker argued each of these claims to the arbitrator, who evaluated their merits and rejected them all. *See* Dkt. 49-2, Pg. IDs 4242-44. This Court is not permitted to engage in *de novo* review of those same claims. As the governing Case Management Order in this case—submitted by the parties and approved by this Court—makes clear, the only issue still in dispute is "[w]hether Respondent can establish grounds *under the FAA* to vacate the award entered in the Arbitration." Dkt. 12, Pg. ID 36 (emphasis added). Walker's allega-

tions of violations during the NBR and Board of Directors proceedings are relevant only to the extent those arguments are couched in claims for vacatur pursuant to the grounds recognized by the FAA.

## A. Walker's Argument for Vacatur Pursuant to the FAA

The only claim Walker raises in his Amended Complaint regarding the arbitration award that is cognizable under the grounds recognized by the FAA for vacatur is that "the [Arbitration] Award was made in violation of 9 U.S.C. § 10(a)(3) . . ." Dkt. 14, Pg. ID 41. Section 10(a)(3) of the FAA allows an award to be vacated where there was misconduct by the arbitrator by "refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." Walker's brief in support of his motion to vacate the arbitration award rests on this claim. Dkt. 60. Walker argues that the arbitrator erred by refusing to grant a *de novo* hearing and consider evidence beyond that which the NBR panel and Board of Directors reviewed. Walker's brief states:

> Despite having full authority to grant a de novo hearing and full knowledge of USA Swimming's violation, the arbitrator determined that it was Mr. Walker's burden of proof 'to show by a preponderance of the evidence that more likely than not, the disciplinary proceedings lack fundamental fairness, the decision was arbitrary or capricious or that the NBR or the Board of Directors was [sic] motivated by prejudice, bias or bad faith." The arbitrator ignored both [a non-binding arbitration decision from a separate matter] and the violations of the

Rules and the Checklist, noting her review was limited to the record . . . She therefore ignored Mr. Walker's argument that the record itself was a poisoned product of the unfair proceedings and that a de novo hearing review was necessary for a fair consideration of the evidence. For instance, by reviewing only the record, the arbitrator refused to hear the contemporaneous witnesses' testimony, which is evidence pertinent to the controversy.

Dkt. 60, Pg. IDs 4912-13.

Walker's argument misses the mark. To sustain a § 10(a)(3) claim, a complainant must show that an arbitrator refused to hear evidence pertinent and material to the particular controversy. *See* 9 U.S.C. § 10(a)(3). Whether evidence is "pertinent and material to the controversy" depends on the issues before the arbitrator and the relevant standard of review. Walker's Application for Relief to the arbitrator alleged that USA Swimming violated its own constitution and bylaws and that the proceedings before the NBR and Board of Directors lacked fundamental fairness. *See* Dkt. 47-1, Pg. ID 3642-47. Although Walker requested a *de novo* hearing on the sexual assault claims, the arbitrator was not bound to grant that request; indeed, the arbitrator concluded that a *de novo* hearing was not required.[1] *See, e.g.,* Dkt. 51-5, Pg. ID 4779.

---

[1] As noted above, Counsel for Walker acknowledged that no governing law, rule, or regulation required the arbitrator to apply a *de novo* standard of review or hold a *de novo* hearing as part of the arbitration, and that it was within the arbitrator's purview to determine the scope of the arbitration review.

Unlike the proceedings before the NBR and Board of Directors, the arbitrator's review did not address whether the evidence was sufficient to prove the sexual assault claims against Walker. The issue before the arbitrator was whether the disciplinary proceedings that led to Walker's ban lacked fundamental fairness, whether the decision was arbitrary or capricious, or if the NBR or Board of Directors were motivated by prejudice. Thus, "evidence pertinent and material to the controversy," for purposes of the arbitration, was the record itself; it would show whether USA Swimming violated its own constitution and bylaws and whether the proceedings before the NBR and Board of Directors lacked fundamental fairness.

In his Amended Complaint filed in this action, Walker argues that "[t]he Arbitrator did not allow any testimony from witnesses who possessed critically important eyewitness testimony during the times in question. These same witnesses were not allowed to testify during the NBR proceedings, or by the USA Swimming Board of Directors." Dkt. 14, Pg. ID 47-48. However, as noted above, Walker fails to provide any governing law, rule, or regulation that required the arbitrator to hear additional testimony from live witnesses. Walker also fails to explain how this purported "critical important eyewitness testimony" was "pertinent and material to" determining whether the proceedings before the NBR and Board of Directors

lacked fundamental fairness, the decision to expel Walker was arbitrary or capricious, or the NBR and Board of Directors were motivated by prejudice. Rather, such additional witness testimony appears directed to contesting the findings of sexual abuse, *not* the issues of procedural fairness within the arbitrator's review.

The record before the Court shows that the arbitrator did in fact consider all of the pertinent and material evidence given the nature and the scope of her review. The arbitration award explained, "[b]ased on established authority, this arbitration hearing has been limited to a review of the Record to determine whether Respondent's hearing process lacked fundamental fairness or whether the disciplinary decision was arbitrary, capricious or in bad faith." Dkt 49-2, Pg. ID 4242 (internal citations omitted). Although additional live witness testimony was not permitted, the arbitrator stated that in reaching her decision she "reviewed the record of the proceedings from the hearings regarding [Walker] before [the NBR and Board of Directors], [and] heard the arguments, proofs and allegations of the parties . . . ." Dkt. 49-2, Pg. ID 4239. The record included written affidavits submitted by Walker of several witnesses who did not testify at the underlying proceedings (thus placing before the arbitrator the same testimony in writing which Walker wished to present live). *See* Dkt. 41-2, Pg. IDs 2776-

2801. These written statements were not subject to cross examination by USA Swimming, but were reviewed nonetheless. Accordingly, for the reasons outlined above, the Court finds that the arbitrator did not fail to hear evidence pertinent and material to the controversy and that the Arbitration Award was not made in violation of 9 U.S.C. 10(a)(3).

## B. Walker Fails to Advance Arguments for Vacatur Based on Any Other Section of the FAA

Neither Walker's Amended Complaint nor his brief advance any other reasons for vacating the arbitration award recognized by the FAA. *See* Dkts. 14, 60. Notwithstanding the absence of such arguments, the Court finds that there is no basis to conclude that: 1) the award was procured by corruption, fraud or undue means, 2) there was evident partiality or corruption in the arbitrator, 3) the arbitrator otherwise engaged misconduct, 4) the arbitrator exceeded her powers, or 5) the arbitrator acted with manifest disregard for the law.

"The Federal Arbitration Act ('FAA') expresses a presumption that arbitration awards will be confirmed." *Nationwide Mutual Ins. Co. v. Home Ins. Co.,* 429 F.3d 640 (6th Cir. 2005). Walker has failed to establish grounds that would support vacatur of the arbitrator's award. Nor has the Court, after careful consideration of the record

and all of the arguments of the parties, found any valid grounds justifying vacatur under the narrow standards set out in the FAA.

## V.    Conclusion

For the foregoing reasons, Plaintiff's Amended Petition and Complaint to Vacate Arbitration Award is **DENIED** and the Complaint for Damages against USA Swimming is **DISMISSED.**

**SO ORDERED.**

Dated: January 12, 2018

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Sitting by special designation

## Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on January 12, 2018.

s/J. Owens
Case Manager